1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH EDGELL, an individual,

             Plaintiff,

     v.

MICHAEL REGAN, Administrator of the US
Environmental Protection Agency,

             Defendant.

CASE NO. 2:22-cv-00045-JHC

ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

# I

## INTRODUCTION

This case involves claims of employment discrimination and retaliation.  Before the Court is Defendant's motion for summary judgment, Dkt. # 36, and Plaintiff's motion for partial summary judgment, Dkt. # 39.  The Court has reviewed: the materials submitted in support of and in opposition to the motions; pertinent portions of the record; and the applicable law.  Being fully advised, the Court GRANTS IN PART and DENIES IN PART both motions.  This order's conclusion below summarizes the Court's rulings.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1

1

2

## II

### BACKGROUND

Plaintiff Joseph Edgell brings three claims against Defendant Michael Regan, Administrator of the United States Environmental Protection Agency, based on alleged retaliation and discrimination during his employment with EPA Region 10 Office of Regional Counsel.  Dkt. # 15.

Plaintiff began to work for the EPA in April 2004; in December 2018, he joined the Region 10 Office of Regional Counsel as a Branch Chief for Attorneys.  *Id.* at 3.  Between August 2019 and March 2020, Lisa Castañon served as Plaintiff's supervisor.  Dkt. # 37-1.

Around July 2019, a female attorney talked with Plaintiff about being sexually harassed and assaulted by a senior EPA Region 10 male supervisor ("senior manager").  Dkt. # 15 at 3. On August 9, 2019, Plaintiff and 20 other employees signed a letter submitted to Regional Administrator Chris Hladick and Deputy Regional Administrator Michelle Pirzadeh about the EPA's handling of these sexual harassment allegations ("the August letter").  *Id.* at 4; Dkt. # 17-1.  Only two managers signed the August letter: Plaintiff and Leah Brown.  Dkt. # 37-14 at 6–7; Dkt. # 41 at 3.

In response to the August letter, on August 15, 2019, Pirzadeh met with most of the signatories to acknowledge their concerns.  Dkt. # 37-13 at 7; Dkt. # 37-5 at 2.  On August 29, 2019, Pirzadeh, on behalf of Hladick, emailed all signatories, again acknowledging their concerns but, this time, asking signatories to be mindful of circulating "incomplete, sensitive information which can be disruptive to the workplace."  Dkt. # 37-5.  The email encouraged anyone who has endured harassment or any form of discrimination to report it to their manager,

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 2

Region 10 Human Capital Officer Peter Sullivan, or Region 10 Equal Employment Officer (EEO) Officer Victoria Plata.  *Id.* at 2.

On August 26, 2019, Plaintiff met with Stephanie Kercheval, a government information specialist, and Ashley Palomaki, the acting deputy regional counsel, to address certain Freedom of Information Act ("FOIA") requests ("the August 26 meeting").  Dkt. # 37-11.  One of the FOIA requests discussed at this meeting related to the senior manager.  Dkt. # 38-2.  On August 28, 2019, Palomaki met with Castañon to report concerns she had resulting from that meeting. *Id.*  Castañon's notes from their meeting state that Palomaki was "shocked" at things Plaintiff said during the August 26 meeting.  *Id.* at 2.  Castañon's notes state that, per Palomaki's account, Plaintiff discussed a "confidential personnel matter that would be subject to the FOIA request and that also involved [Palomaki] and an EPA Region 10 manager.  [Palomaki] was unaware of the FOIA request.  [Plaintiff] was a signatory to a letter that would be responsive to the FOIA request."  *Id.*  Per Palomaki's account, Plaintiff said he believed the senior manager should be fired and Plaintiff hoped the manager would retaliate against Palomaki so he could be discharged from employment.  *Id.*

In September 2019, after the report from Palomaki, Castañon met with Stephanie Kercheval—the other employee involved in the August 26 meeting—to discuss her recollection of events.  Dkt. # 37-14 at 14; Dkt. # 38-4.  Kercheval said she could not recall if Plaintiff said he thought the senior manager should be fired or that he would be happy if the senior manager retaliated against Palomaki.  Dkt. # 38-4 at 2, 4.

On September 3, 2019, Castañon met with Plaintiff to discuss the August 26 meeting. Dkt. # 38-3 at 2.  When asked if he said the manager should be fired or that he would be happy if

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 3

the manager retaliated against Palomaki so the senior manager could be fired, Plaintiff said that

he had "no clue[.]" *Id.*  During this meeting, Plaintiff also said that he felt like he was being

"interrogated for something that I've done wrong"; that "it's not the best strategy to go after the

people who expressed concern about sexual harassment"; and that he doesn't "think that [the

manager in question] should be a supervisor with five allegations against him." *Id.* at 3.

Castañon reminded Plaintiff that as a manager, his harassment reporting responsibilities differed

from those in a non-supervisory role, including an affirmative obligation to start the Order 4711[1]

process when harassment is reported, and to pursue avenues—other than signing a letter—

including going to Castañon separately.  Dkt. # 38-3.  Castañon reports that she had a similar

discussion with Brown.  Dkt. # 37-14 at 7.

On September 20, 2019, Plaintiff emailed Castañon to "confirm by email what [he] told

[her] [. . .] at [their] Check-in Meeting," that he planned to file a "whistleblower and retaliation

complaint regarding the sexual harassment and response thereto with the Office of Special

Counsel and the Inspector General."  Dkt. # 43-1 at 2.

On September 24, 2019, Plaintiff attended a national webinar training for managers.  Dkt.

# 37-11 at 11.  The training posed questions and scenarios for attendees to address in the

webinar's chat.  Dkt. # 37-6.  In the chat, in response to a question about an employee misusing

drugs, Plaintiff wrote, "Is Christine [a]n actual idiot?" and then said, "Hey Joe, where ya' goin'

with that gun in your hand." *Id.*  A participant of the training left a voicemail for Pirzadeh

---

[1] EPA Order 4711 is the procedure for addressing allegations of workplace harassment.  Dkt. # 37 at 2.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 4

reporting Plaintiff's comments.  Dkt. # 38-5.  Regarding the gun comment, Plaintiff says that he was quoting a Jimi Hendrix song.  Dkt. # 37-11 at 17–18.

On October 29, 2019, Castañon issued Plaintiff a Letter of Reprimand (LOR) for (1) discussing a "confidential investigation" and stating that he hoped "an Affected Person under EPA Order 4711 was retaliated against by the Alleged Harasser so that the Alleged Harasser would be fired" during the August 26 meeting and (2) for making a comment about a gun during the September 24, 2019, training.  Dkt. # 38-1.  The letter stated that it would remain in his personnel folder for two years.  *Id.*

On November 1, 2019, Plaintiff responded to the LOR, providing his account of how the conversation about the senior manager came up during the August 26 meeting and to provide context for the gun comment.  Dkt. # 43-3.

On December 11, 2019, Plaintiff made his initial contact with the Region 10 EEO, alleging retaliation for engaging in protected activities and discrimination based on sex.  Dkt. # 40-1.

Plaintiff says that in January 2020, Castañon began to "ostracize" him and take away his job responsibilities, including FOIA assignments.  Dkt. # 15 at 5.  Castañon says that, on the suggestion of Region 10's employment attorney, she took over management of the FOIA request regarding the senior manager.  Dkt. # 37-14 at 25.

In January 2020, Nancy Lindsay, Director of the Mission Support Division of EPA Region 10, emailed all Region 10 employees, reporting that an improvised explosive device was sent to a federal building in Anchorage, Alaska.  Dkt. # 37-8.  Plaintiff responded to the email

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5

saying, "I knew those people in the postal service were out to get EPA!  Thanks for sending this reminder.  Real incidents help bring home the importance of these issues to people."  *Id.* at 2.  Concerned about Plaintiff's response, Lindsay forwarded this email to Castañon, Sullivan, and Kathy Reif.  *Id.*

Over the course of Plaintiff's tenure as supervisor, Castañon received oral reports from employees expressing concerns over interactions they had with him.  Dkt. # 38 at 3.  Castañon asked these employees to memorialize their concerns in writing.  *Id.*  These employees included Susan Hass and Christine June Broussard, both Government Information Specialists, and Jennifer MacDonald, the Senior Information Law Attorney.  Dkt. # 36 at 8–9.

According to Hass, Plaintiff told her that the FOIA Case Manager jobs are "shit jobs" and Plaintiff said in a meeting that job applicants on a potential hire list had "advanced degrees" so he would need to call them to explain what the job was "really like."  Dkt. # 38-7 at 2.  Haas said that she had a master's degree and thus Plaintiff's comment offended her.  *Id.*  According to Broussard, Plaintiff suggested she "ease up a bit and learn how to let go of things that is [*sic*] out of [her] control and if that means that [she has] to 'drop the ball, and miss a deadline,' that it was okay."  Dkt. # 38-8 at 2.  Additionally, in response to Broussard telling Plaintiff that she thrives when she is in control, Plaintiff reportedly said, "June, you might need professional help, have you thought to get counseling with your control issues?"  *Id.*  Finally, Plaintiff reportedly said that the FOIA job was "not challenging enough for some [*sic*] with a master's degree" and it is "not that hard."  *Id.* at 3.   On several occasions, according to MacDonald, Plaintiff suggested that MacDonald should not be as thorough in her work so that Plaintiff could use any

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6

consequences of the lack of thoroughness to make the case that extra FOIA staff and resources were needed.  Dkt. # 38-9 at 2.

On February 21, 2020, Castañon issued a proposed seven-day suspension to Plaintiff for "conduct unbecoming a supervisor."  Dkt. # 38-6.  The proposed suspension listed five specifications as the basis:

> Specification 1: On January 29, 2020, you sent an email message to Nancy Lindsey, stating "I knew those people in the postal service were out to get EPA!" in response to her Region-wide email about an improvised explosive device sent to the James Fitzgerald Federal Building. Specification 2: On approximately January 16, 2020, you stated that two job applicants for the FOIA case manager position had advanced degrees so you would have to call them and explain what the job was really like. Specification 3: During Christine June Broussard's performance evaluation discussion, you encouraged her to be okay with dropping the ball on her work. Specification 4: During Ms. Broussard's performance evaluation discussion, you commented that she might need professional help and asked whether she had thought to get counseling with her control issues. Specification 5: In approximately mid-December 2019, you told Jennifer MacDonald that we should not do as thorough a job with our FOIA responses.

*Id.*  James Payne, Deputy General Counsel for Environmental Media and Regional Law Offices, was to make the final decision on Plaintiff's suspension.  Dkt. # 37-12 at 3; Dkt. # 36 at 10.

On February 28, 2020, Plaintiff responded to the proposed suspension, which went to Payne.  Dkt. # 18-5.  Plaintiff asserted that he believed Castañon was retaliating against him for participating in previous complaints about the EEO's handling of sexual harassment allegations.  *Id.*; Dkt. # 15 at 7.  Plaintiff also said that many comments reported to Castañon from employees were false or taken out of context.  Dkt. # 18-5.  Payne and Plaintiff later met to discuss the proposed suspension.  Dkt. # 37-11 at 28.

In March 2020, Plaintiff filed a formal complaint with the EEO alleging discrimination and retaliation.  Dkt. # 40-2.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 7

In April 2020, Castañon wrote an interim performance review for Plaintiff in which she rated him "Minimally Successful" in the categories "effectively manages people" and "develops and maintains effective working relationships." Dkt. # 38 at 4.

On November 20, 2020, Payne made the final suspension determination and suspended Plaintiff for four days on the basis of specifications (1)–(3), and (5) from the proposed suspension. Dkt. # 37-9 at 3. In making this determination, Payne considered Plaintiff's written and oral responses to the proposed suspension. *Id.*

At the end of January 2021, Plaintiff left the EPA and took a position with the National Oceanic & Atmospheric Administration. Dkt. # 37-11 at 6.

Plaintiff commenced this lawsuit on January 18, 2022, claiming discrimination based on sex and retaliation under Title VII. Dkt. # 1. He filed his first amended complaint alleging discrimination, retaliation, and a retaliatory hostile work environment under Title VII on June 23, 2023. Dkt. # 15. On October 18, 2023, Defendant moved for summary judgment, Dkt. # 36, and Plaintiff moved for partial summary judgment, Dkt. # 39.

### III
### DISCUSSION

A.   Summary Judgment Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 8

The moving party bears the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If that burden is met, the burden shifts to the nonmoving party to show there is a genuine issue for trial. *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009). When the nonmoving party fails "to make a sufficient showing on an essential element of [their] case with respect to which [they] ha[ve] the burden of proof," "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323. On cross motions, a court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006); *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." (quoting *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001))).

B.   Defendant's Motion for Summary Judgment on Plaintiff's Title VII Retaliation Claim

At the summary judgment stage, the burden shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–805 (1973), applies to a claim of retaliation. *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 693 (9th Cir. 2017). If the plaintiff establishes a prima facie case of retaliation, the burden then shifts to defendant to provide a legitimate and nonretaliatory reason for the adverse employment action(s) taken. *Id.*; *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If this burden is met, the plaintiff "has the ultimate burden of showing that [the defendant's] proffered reasons are pretextual." *Reynaga*, 847 F.3d at 693; *Ray*, 217 F.3d at 1240.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 9

1.      Prima facie showing

"To establish a prima facie case of retaliation, [a plaintiff] must show 'that [they] undertook a protected activity under Title VII, [their] employer subjected [them] to an adverse employment action, and [. . .] a causal link between those two events.'"  *Reynaga*, 847 F.3d at 693.

a.   Protected Activities

An employee engages in a protected activity if they, "(1) opposed any practice made an unlawful employment practice by this subchapter, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); *see also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).

Defendant's motion appears to assume that the only alleged protected activity underlying Plaintiff's retaliation claim is his act of signing the August letter.  Dkt. # 36 at 24.  And Defendant appears to concede that this was a protected activity.

But in opposition to Defendant's motion, Plaintiff says he engaged in the following alleged protected activities:

(1) Plaintiff signed the August letter, criticizing management's decision to keep an alleged sexual harasser employed in a position of influence.

(2) In late August 2019, Plaintiff expressed an opinion that a sexual harasser should be fired.[2]

---

[2] The Court assumes that Plaintiff means late August *2019*, not 2020, given the briefing indicates that Plaintiff opposed the continuing employment of an EPA supervisor accused of sexual harassment during August 2019.  *See generally* Dkt. # 36; Dkt. # 41.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 10

1

2

3

(3) On September 20, 2019, Plaintiff emailed Castañon notifying her "that he planned to file a retaliation complaint with the Office of Special Counsel after he was subjected to a hostile workplace interview concerning his signing of the Letter of Concern."

4

5

(4) On November 1, 2019, "[Plaintiff wrote] a response to the [Letter of Reprimand] alleging [r]etaliation for expressing outrage at victim blaming and protecting a serial sexual harasser."

6

7

8

(5) On December 11, 2019, "[Plaintiff contacted the] EEO alleging he was discriminated against in and retaliated against based on receiving a [Letter of Reprimand], having work assignments removed."

9

10

(6) On February 28, 2020, "[Plaintiff wrote] a response to Proposed Suspension alleging that the Proposed Suspension is both retaliatory and discriminatory."

11

Dkt. # 41 at 17–18.

12

13

14

15

16

In reply, Defendant contends that Plaintiff is attempting to raise new theories of retaliation in his response. Dkt. # 48 at 2. Defendant says that because Plaintiff did not "mention other protected activities [besides the August letter] in his amended complaint or his interrogatory responses,"[3] these are unpleaded retaliation theories that cannot be raised at

17

18

19

20

21

22

23

[3] Defendant cites Dkt. # 37-10, which includes portions of Plaintiff's responses to Defendant's First Set of Interrogatories and Requests for Production to Plaintiff. Dkt. # 48 at 2. Interrogatory number 1 asks Plaintiff to describe the protected activity that Plaintiff engaged in for purposes of his retaliation claim. Dkt. # 37-10 at 3. The response "refers Defendant to the EEO ROI Affidavit A – Joe Edgell, case number EPA-2020-0041-R10." Dkt. # 37-10 at 4. While neither party directs the Court to this document, it can apparently be found at Dkt. #40-2 (this document is described as "a correct copy of Mr. Edgell's Formal EEO Complaint. This Formal EEO Complaint was taken from the Report of Investigation associated with Mr. Edgell's EEO complaints that preceded the filing of this action." Dkt. # 40 at 2.). In this document, Plaintiff says that he was "discriminated against based upon retaliation for engaging in protected EEO activity and discriminated against based upon [his] sex (male) by [his] female supervisor." Dkt. # 40-2 at 5. Plaintiff does not say in this document what the "protected EEO activity" includes. But as explained below, this is not detrimental to Plaintiff's claim as he did include factual allegations to support his theories of retaliation in the first amended complaint.

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 11

summary judgment.  *Id.* at 2–3 (citing *Cuevas v. SkyWest Airlines, Inc.*, 644 F. App'x 791, 792 (9th Cir. 2016) and *Lui v. DeJoy*, No. 3:21-cv-05030-BHS-TLF, 2023 WL 3269760, at *4 (W.D. Wash. May 5, 2023)).  The Court disagrees.  In *Cuevas*, the Ninth Circuit stated that when necessary factual allegations to state a claim are not included in the complaint, raising such facts at summary judgment is inappropriate.  644 F. App'x at 792 (citing *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008)).  But in *Lui*, the court held,

> [a] Plaintiff may generally rely on factual allegations raised for the first time in response to a motion for summary judgment.  Indeed, through discovery, plaintiffs often become aware of facts that were unknown—or even unknowable—to them when they filed suit.  There is no requirement that every fact in support of a claim be articulated in the plaintiff's complaint.

2023 WL 3269760, at *4.  In *Lui*, the court found that the amended complaint alleged only that the employer retaliated against plaintiff for investigating a workplace harassment allegation, not for "reporting to her supervisor that other employees discriminated against her based on her race and sex."  2023 WL 3269760, at *4.  But here, the amended complaint *does* include factual allegations to support the theories of retaliation: Plaintiff's first amended complaint states that (1) he engaged in protected activities "on several occasions during his employment" by opposing discriminatory practices by EPA employees, Dkt. # 15 at 13; (2) he responded to the proposed 7-day suspension by stating that he believed it was in retaliation for "participating in previous complaints about the EEO's handling of sexual harassment allegations[,]" Dkt. # 15 at 7; and (3) he had filed informal and formal EEO complaints alleging retaliation, Dkt. # 15 at 9.

Defendant does not explain on reply how any of these actions are not protected activities.  Dkt. # 48 at 2–3.  As Plaintiff presents evidentiary support for his alleged protected activities, at the very least, he raises issues of fact with respect to them.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

    b. Adverse Employment Actions

   "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243.  For a Title VII retaliation claim, the action need not "materially alter [] the terms or conditions of the plaintiff's employment," and it "may be brought against a much broader range of employer conduct than substantive claims of discrimination."  *Campbell v. Hawaii Dep't. of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018).

   Defendant argues that the LOR, the interim review, and the proposed and final suspensions were not adverse actions for purposes of the *disparate treatment* claim, which requires a different standard.  *See id.;* Dkt. # 36 at 13–25.  But Defendant does not dispute that these may be adverse actions for purposes of Plaintiff's *retaliation* claims.  *Id.*

   In Plaintiff's opposition to Defendant's motion for summary judgment, he identifies the following adverse employment actions underlying his retaliation claim:

(1) The September 3, 2019, investigative interview conducted by Castañon regarding the August letter and the August 26 meeting, in which Plaintiff allegedly discussed the assault allegations with coworkers;

(2) In early September 2019, Castañon removed job duties from Plaintiff's workload and Plaintiff was allegedly "ostracized at work, and treated with hostility";

(3) On October 29, 2019, Plaintiff received the Letter of Reprimand, *see* Dkt. # 17-3;

(4) On February 21, 2020, Plaintiff received the proposed suspension, *see* Dkt. # 18-4;

(5) In April 2020, Plaintiff received Castañon's negative interim performance rating; and

(6) On November 20, 2020, Plaintiff receives the Final Suspension Letter, *see* Dkt. # 24-5.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 13

Dkt. # 41 at 17–19.

On reply, Defendant cites to *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 2000) which states that "mere ostracism in the workplace is not enough to show an adverse employment decision." Thus, the Court concludes Plaintiff has not made a prima facie showing of retaliation based on ostracization in the workplace. Dkt. # 48 at 12. However, Plaintiff provides evidence that Defendant engaged in the remaining actions, and Defendant does not otherwise address whether these constitute adverse employment actions. Viewed in the light most favorable to Plaintiff, the Court finds there are issues of fact regarding whether these remaining actions constitute adverse employment actions for Plaintiff's retaliation claim.

c.      Causal Link

The final element of a prima facie case requires Plaintiff to establish a causal link showing that the protected activity was a but-for cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Plaintiff says that "[t]emporal proximity between protected activity and an adverse employment action can by itself constitute circumstantial evidence of [causation] in some cases." Dkt. # 41 at 17 (citing *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003); *Varese v. Clatsop Behav. Healthcare*, No. 3:16-cv-00738-AA, 2018 WL 1513271, at *13 (D. Or. Mar. 27, 2018)).

Defendant, on the other hand, asserts that since the Supreme Court decided *Nassar*, 570 U.S. 338, the Ninth Circuit has questioned whether temporal proximity alone can establish a

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 14

genuine dispute of material fact for the causation element.  Dkt. # 48 at 3–4.  This is true to some extent.[4]

But Ninth Circuit decisions post-*Nasser* recognize temporal proximity as sufficient to establish a Plaintiff's prima facie causal link.  *See, e.g.*, *Garcia v. City of Everett*, 728 F. App'x 624, 628 (9th Cir. 2018) ("Courts have held 'very close' temporal proximity to mean that 1.5 months is sufficient whereas three and four months is too long."); *Santillian v. U.S. Waste of Cal.*, 853 F.3d 1035, 1047 (9th Cir. 2017) ("The causal link between a protected activity and the alleged retaliatory action can be inferred form timing alone when there is a close proximity between the two."); *see also Samson v. Wells Fargo Bank, N.A.*, 777 F. App'x 881, 883–84 (9th Cir. 2019).  "[T]iming alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the

---

[4] *See, e.g.*, *Fried v. Wynn Las Vegas, LLC*, No. 20-15710, 2021 WL 5408678, at *3 (9th Cir., Nov. 18, 2021) (intervening wrongful conduct by plaintiff disrupted causal inference from temporal proximity of the protected activity and adverse employment action); *Williams v. City of Bellevue*, 740 F. App'x 148, 149–50 (9th Cir. 2018) (Although the court found temporal proximity between the protected activity and the later termination, because it was undisputed that Plaintiff committed unacceptable conduct throughout his employment, which was in-part the basis for the termination, the court found plaintiff had not established but-for causation); *Serlin v. Alexander Dawson Sch., LLC*, 656 F. App'x 853, 855–56 (9th Cir. 2016) (holding that the "mere fact that [Plaintiff] made her complaint three months prior to [Defendant's] decision not to renew her contract is insufficient evidence of causation in this case."); *Green v. City of Phoenix*, No. CV-15-02570-PHX-DJH, 2019 WL 4016484, at *13 (D. Ariz. Aug. 26, 2019), *aff'd*, 823 F. App'x 549 (9th Cir. 2020) ("In the end, it takes more than allegations of temporal proximity to demonstrate but-for causation in a Title VII retaliation claim post-*Nassar*); *Kwesele v. King Cnty.*, No. 2:17-CV-1426-RAJ, 2019 WL 266450, at *12 (W.D. Wash. Jan. 18, 2019), *aff'd*, 804 F. App'x 726 (9th Cir. 2020) ("'Aside from temporal proximity, Plaintiff offers little evidence that his engaging in protected activity was a factor at all, much less a 'but-for cause,' in his probation extensions or termination.' *See Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 360 ("[R]etaliation claims must be proved according to traditional principles of but-for causation.")'").
Defendant cites *Curley v. City of N. Las Vegas*, 772 F.3d 629, 634 (9th Cir. 2014), for the proposition that "new information revealed by [an employer's] investigation defeats any causal inference that might otherwise follow from the temporal proximity between his protected activity and his termination[.]"  Dkt. # 48 at 4.  But in that case, the court did not decide whether the plaintiff established a prima facie case of retaliation and thus a causal link.  *Curley*, 772 F.3d at 634.  The court only decided whether Plaintiff pointed to sufficient evidence to establish pretext.  *Id.*

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 15

employee's protected expression." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (internal quotation marks omitted) (citing Seventh Circuit, Tenth Circuit, and Supreme Court cases that held that four months, eight months, and five months, standing alone, were too long to support inference of discrimination). Additionally, "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). Finally, a Plaintiff may use a "cat's paw" theory of liability for causation,

> when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus. Under this theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action. Put another way, a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action.

*Acosta v. Brain*, 910 F.3d 502, 514–15 (9th Cir. 2018) (quoting *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)).

The September 3, 2019, investigative interview occurred on the heels of the August letter. The removal of Plaintiff's duties in September 2019 also occurred soon after the August letter and after Plaintiff made statements to Castañon during the September 3 investigative interview. And Plaintiff received the LOR within two months of Plaintiff's statements to Castañon and his September 20, 2019, email to Castañon informing her that he would be filing a whistleblower and retaliation complaint. Moreover, Castañon is the EPA employee who issued the proposed suspension, which referred to the letter of reprimand (Dkt. # 18-4 at 4), and who wrote Plaintiff's negative interim performance review. Because of Castañon's continued involvement in all alleged adverse employment except the final suspension, there exists an issue of fact regarding the causal connection between Plaintiff's protected activities and the removal of Plaintiff's

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 16

duties, the LOR, the proposed suspension, and the negative interim performance review.  Finally, while Payne decided the final suspension, it was a consequence of Castañon's proposed suspension.

Plaintiff therefore has pointed to evidence establishing a causal link between his protected activities and the following adverse employment actions:

(1)  The September 3, 2019, investigative interview;

(2)  Removal of job duties in early September 2019 as well as hostile treatment;

(3)  The October 29, 2019, Letter of Reprimand at Dkt 17-3;

(4)  The February 21, 2020, proposed suspension, *see* Dkt. # 18-4;

(5)  The April 2020 negative interim performance rating; and

(6)  The November 20, 2020, final decision on suspension, *see* Dkt. # 24-5;

Dkt. # 41 at 17–19

2.      Legitimate, nonretaliatory reason

At the second step of the *McDonnell Douglas* burden shifting framework, Defendant must assert legitimate, nonretaliatory reasons for the adverse employment actions taken. *Reynaga*, 847 F.3d at 693.

Defendant's stated reasons for issuing the LOR are that (1) it stemmed from the August 26 meeting in which Plaintiff allegedly discussed a confidential sexual harassment investigation and (2) Plaintiff's comments about a gun.  Dkt. # 36 at 15.  Protecting the workplace from disruption because of conduct by an employee is a legitimate reason for the LOR.  *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985).  Moreover, violation of company policy is a legitimate reason for taking an adverse employment action.  *Day v. Sears Holdings Corp.*,

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 17

930 F. Supp. 2d 1146, 1169–70 (C.D. Cal. 2013).[5]  Defendant asserts Plaintiff violated EPA Order 4711 section V.B.3.a(4) when he discussed the internal investigation, Dkt. # 48 at 4, which is a legitimate reason.

Defendant asserts that it suspended Plaintiff because: "he: 1) sent an unprofessional email about an explosive device found at the Anchorage federal building and 2) made several disparaging statements to his staff."  Dkt. # 48 at 13 (citing Dkt. # 37-9); Dkt. # 36 at 20.  His low interim rating was allegedly for these reasons as well.  Dkt. # 36 at 20.  Mistreating subordinate staff is a legitimate, nondiscriminatory basis for an adverse employment action. *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, 647 F. Supp. 3d 992, 1009 (D. Or. 2022).  Unprofessional emails also constitute a legitimate, nondiscriminatory reason for an adverse employment action.  *Klamrynski v. Maricopa Cnty. Cmty. Coll. Dist.*, No. 22-16752, 2023 WL 6139567, at *1 (9th Cir. Sep. 20, 2023).

As to the investigative interview, Defendant asserts that Castañon met with Plaintiff to discuss the August 26 meeting.  Dkt. # 36 at 5.  Defendant further asserts that Castañon took on Plaintiff's FOIA assignment because it involved a personnel issue, per the advice of another attorney.  *Id.* at 7.  Plaintiff does not argue these reasons are illegitimate.

Because Defendant has provided legitimate, nonretaliatory reasons, except as to the alleged hostility Plaintiff faced which Defendant does not address, the burden shifts to Plaintiff

---

[5] Plaintiff says that this case does not apply because the employee in *Day* who violated company policy requiring confidentiality in investigations was "a witness in the actual investigation that led to her termination," while here, Plaintiff was not such a witness.  Dkt. # 41 at 28.  This distinction does not make a legal difference.  According to *Day*, violating a company policy is a legitimate, nondiscriminatory reason.  930 F. Supp. 2d at 1169–70.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 18

1   to point to evidence showing Defendant's reasons are pretext for a retaliatory intent.  *Reynaga*,

2   847 F.3d at 693.

3           3.      Pretext

4           At the final step of the *McDonnell Douglas* framework, a plaintiff may show pretext

5   either "directly by persuading the court that a [retaliatory] reason more likely motivated the

6   employer or indirectly by showing that the employer's proffered explanation is unworthy of

7   credence."  *Campbell*, 892 F.3d at 1022 (internal quotation marks and citation omitted).  The

8   ultimate question is whether Defendant was "more likely motivated by retaliatory animus than

9   by its stated legitimate reasons."  *Id.* at 1023.

10          Plaintiff says there is both direct and circumstantial evidence of retaliation.  Dkt. # 41 at

11  16–17.  He contends the following is "[d]irect [e]vidence of retaliatory motive behind all

12  subsequent adverse actions": (1) a jury could "reasonable infer" retaliatory intent from

13  Castañon's alleged statements that it was "inappropriate for a manager to express an opinion

14  publicly that sexual harassment is wrong and that a harasser should be dismissed [re: the letter]

15  and (2) that "[Plaintiff's] November 2019 LOR stated that he was being reprimanded for stating

16  that a sexual harasser should be fired[.]"[6]  *Id.* at 16. Yet this is not direct evidence.  "Direct

17  evidence is evidence which, if believed, proves the fact [of discriminatory animus] without

18  inference or presumption."  *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir.

19  2005) (internal quotation marks and citation omitted); *Hittle v. City of Stockton, California*, 76

---

[6] The LOR does not state this.  It says that because Plaintiff "discussed a confidential investigation and stated that [he] hoped that an Affected Person under EPA Order 4711 was retaliated against by the Alleged Harasser so that the Alleged Harasser would be fired."  Accordingly, it is circumstantial evidence requiring an inferential step, as made clear by the legal discussion in the text following this footnote.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 19

F.4th 877, 888 (9th Cir. 2023).  Direct evidence "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  *Coghlan*, 413 F.3d at 1095. "Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination."  *Id.*  Plaintiff's evidence to show pretext is circumstantial.

When "the plaintiff proffers only circumstantial evidence that the employer's motives were different from its stated motives, [the court] require[s] specific and substantial evidence of pretext to survive summary judgment."  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004) (internal quotation marks and citation omitted).

Plaintiff identifies several pieces of circumstantial evidence illustrating pretext: (1) the stated reasons for the letter of reprimand, proposed suspension, final suspension, and interim review are false and pretext evidence for suspension; (2) there is a question of fact whether the EPA deviated from its Corrective Action and Discipline Policy with respect to the LOR, Proposed, and Final Suspension; (3) there is evidence of similarly situated employees treated more favorably than Plaintiff; (4) there is evidence of Plaintiff's good performance, which refutes allegations of bad performance by Plaintiff; (5) Plaintiff's report of discrimination to Payne was not investigated before the final suspension decision; and (6) a coworker asserted that she believed Plaintiff was being retaliated against between October 2019–February 2020.  Dkt. # 41 at 19, 21–27.

      a.   Plaintiff's assertion that the stated reasons underlying the letter of reprimand, proposed suspension, final suspension, and interim review are baseless

In judging whether a defendant's proffered justifications are false, "it is not important whether they [are] *objectively* false[.] [. . .] Rather, courts only require that an employer honestly

1    believed its reason for its actions, even if its reason is foolish or trivial or even baseless."

2    *Villiarimo*, 281 F.3d at 1063.  If a plaintiff does not present evidence that the defendant did not

3    honestly believe its proffered reasons, they have not provided evidence of pretext.  *Id.*

4        Plaintiff asserts that "question of fact exist [*sic*] as to whether facts underlying

5    [Plaintiff's] LORLORLOR [*sic*], Suspension, and Interim Review were false."  Dkt. # 41 at 19.

6    First, regarding the LOR, according to Plaintiff, he never said he hoped Palomaki would be

7    "retaliated against" and therefore Castañon's reasoning was faulty.  *Id.*  He also contends that he

8    did not reveal any information he learned through a confidential investigation and therefore

9    Castañon's determination that he discussed a confidential investigation was false.  *Id.*  But the

10   standard is not whether the proffered justifications are *objectively* false, rather, it is whether the

11   employer "honestly believed its reason for its actions[.]"  *Villiarimo*, 281 F.3d at 1063.  Here,

12   based on the notes taken after Castañon met with Palomaki, Castañon says she believed Plaintiff

13   made these statements and discussed a private personnel matter.  Dkt. # 38-2.  And Plaintiff

14   makes no argument nor points to any evidence suggesting that Castañon did not believe what she

15   was told by Palomaki.

16       Regarding the proposed and final suspension, Plaintiff denies making "unprofessional"

17   comments to employees.  Dkt. # 41 at 20.  He also asserts that Castañon failed to get his side of

18   the story before the proposed suspension.  *Id.*  Moreover, he says that Payne's "allusions that

19   Broussard and MacDonald gave identical [*sic*], creates material issues of facts because there is a

20   dispute that their statements are 'identical' as Broussard was alleging [Plaintiff] told her to 'drop

21   the ball', while Ms. MacDonald alleged that [Plaintiff] told her not to be thorough.'"  *Id.*  This

22   evidence does not illustrate pretext for either the proposed or final suspensions.  Again, the

24   ORDER ON DEFENDANT'S MOTION FOR
     SUMMARY JUDGMENT AND PLAINTIFF'S
     MOTION FOR PARTIAL SUMMARY
     JUDGMENT - 21

standard is whether the employer "honestly believed its reason for its actions[.]"  *Villiarimo*, 281

F.3d at 1063.  Plaintiff's denial of making "unprofessional" comments to employees does not

create a genuine dispute of material fact about whether Castañon "honestly believe [her] reason

for [her] actions."  *Id.*  Castañon says she proposed the seven-day suspension based on the

comments Plaintiff made about an explosive device found in a federal building and the written

comments she received from his staff.  Dkt. # 38-6.  Additionally, Payne said in his final

suspension decision that the statements made to Broussard and MacDonald were "*nearly*

*identical*" and that it "is conduct unbecoming a manager to tell an employee that it is acceptable

to deliberately not do as thorough a job with the agency's FOIA responses."  Dkt. # 37-9 at 3

(emphasis added).

> b.   EPA deviated from its Corrective Action and Discipline Policy with respect to
> the LOR, proposed suspension, and final suspension

Plaintiff says that because Defendant did not informally counsel Plaintiff prior to issuing

the LOR, as allegedly required by the Corrective Action and Discipline Policy ("Policy"), this

suggests pretext.  Dkt. # 41 at 21.  Disregarding company policy or failure to follow the

company's typical practice may be evidence of pretext.  *See Earl v. Nielsen Media Rsch., Inc.*,

658 F.3d 1108, 1117 (9th Cir. 2011).  "But such a deviation must be considered in context and

may not always be sufficient to infer a discriminatory motive."  *Merrick v. Hilton Worldwide,*

*Inc.*, 867 F.3d 1139, 1149 (9th Cir. 2017).  The Policy states that

> before issuing an official reprimand, the supervisor must fully discuss the incident
> with the employee to permit the employee to present his or her side of the situation.
> If after the employee presents his or her views, the supervisor considers the
> reprimand to be warranted, the supervisor should prepare the written reprimand in
> accordance with 7a(1). Dkt. # 43-4 at 4.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 22

1

2     The LOR was based on the comments made in the August 26 meeting and in the national

3     manager training.  Dkt. # 38-1.  There is no dispute that Plaintiff and Castañon met regarding the

4     August 26 meeting on September 3, 2019.  Dkt. # 41 at 4–5.  But no evidence suggests that

5     Plaintiff and Castañon met to discuss the comment Plaintiff made about a gun prior to Castañon

6     issuing the LOR.  Viewing the evidence in the light most favorable to Plaintiff, this deviation

7     from the Policy creates a genuine dispute of material fact of whether Defendant's legitimate,

8     nonretaliatory reasons for issuing the LOR are pretext for retaliation.  *See Earl*, 658 F.3d at 1117.

9     Because the LOR was referenced in Castañon's proposed suspension, Dkt. # 18-4 at 4, which

10    ultimately triggered the final suspension, Dkt. # 24-5, these actions are sufficiently connected

11    such that evidence of pretext for the LOR calls into question the legitimate and nonretaliatory

12    reasons proffered by Defendant for the proposed and final suspensions.  Thus, viewing the

13    evidence in the light most favorable to Plaintiff, evidence of Castañon's deviation from policy

14    when issuing the LOR infects the subsequent actions which relied, at least in part, on the LOR.

15            c.    Evidence of similarly situated employees treated more favorably than Plaintiff
                   suggests pretext

16        "[I]ndividuals are similarly situated when they have similar jobs and display similar

17    conduct."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).  In *Vasquez*, the

18    court found that because one employee "did not engage in problematic conduct of comparable

19    seriousness to that of [plaintiff,]" they were not similarly situated.  *Id.*

20        The only person Plaintiff identifies as receiving favorable treatment was Leah Brown.

21    Dkt. # 41 at 23.  It is undisputed that Plaintiff and Leah Brown were the only managers who

22    signed the August letter.  *Id.* at 3; Dkt. # 48 at 8–9, 10.  Castañon counseled both about the

23    appropriate processes to raise concerns when in a managerial position.  Dkt. # 42-12 at 5, 7, 10;

24    ORDER ON DEFENDANT'S MOTION FOR
      SUMMARY JUDGMENT AND PLAINTIFF'S
      MOTION FOR PARTIAL SUMMARY
      JUDGMENT - 23

Dkt. # 41 at 23.  Plaintiff recalls a conversation between himself, Leah Brown, and another attorney, in which they discussed the harassment allegations against the senior manager with a subordinate, but Plaintiff presents no evidence beyond this vague recollection and lacks details about identity of the subordinate or evidence that Castañon was aware of these conversations. Dkt. # 37-11 at 9.  Nor does Plaintiff present evidence that Brown or any other EPA employee made a comment about a gun in the workplace or made similar comments about the explosive device found in a federal building.  *Id.* at 21–22.

                  d.   Plaintiff points to evidence of good performance to refute allegations of his bad performance

Plaintiff says that evidence of good performance creates "an issue of fact regarding whether his Proposed Suspension, Final Suspension, and April 2020 interim performance review was a [*sic*] pretext for retaliation."  Dkt. # 41 at 26.  Plaintiff points to the following evidence: (1) "positive survey results from employees under his supervision" administered in April 2020, Dkt. # 41 at 25 (citing Dkt. # 43-5); (2) a September 2019 email from Kercheval, "a direct report of [Plaintiff's]" sent to Castañon "emphasizing [his] ability to build strong relationships with his team members," Dkt. # 41 at 25 (citing Dkt. # 42-3); (3) "commendable" feedback from Katie McClintock, "a supervisor and client of [Plaintiff's]," Dkt. # 41 at 25 (citing Dkt. # 42-4); (4) feedback from Derrick Terada, Acting Section Chief of Region 10's Surface Water Enforcement Section, highlighting Plaintiff's helpfulness, Dkt. # 41 at 25 (citing Dkt. # 42-5); (5) feedback from Kelly McFadden, the Branch Chief of Region 10's Air Permits and Toxics Branch, regarding his communication style and work process, Dkt. # 41 at 25 (citing Dkt. # 42-7); and (6) feedback from Lisa McArthur, Manager of the Region 10 RCRA & Tanks Branch, regarding

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 24

Plaintiff's "direct communication style and his extensive knowledge on various issues," Dkt. # 41 at 25 (citing Dkt. # 42-6).

The proffered reasons for the proposed and final suspension were that Plaintiff sent an unprofessional email about an explosive device found in an Alaskan federal building and that he made several specific statements to staff disparaging their position and suggesting staff need not meet their employment expectations.  Dkt. # 38-6; Dkt. # 37-9.  The explanation does not state that Plaintiff was a generally bad employee, so the evidence of good performance does not "challenge the credibility" of Castañon or Payne's motives in proposing a seven-day suspension and deciding on a four-day suspension, respectively.  *See, e.g.*, *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 746 (9th Cir. 2003).

But Castañon said in the interim rating that, among other things, Plaintiff has shown problems "with building cooperative working relationships with persons inside and outside of ORC to promote teamwork and collaboration," "building collegiality by sharing ideas and through group problem-solving," "encouraging and facilitating cooperation and trust within the ORC management team," and "with treating others with courtesy and respect."  Dkt. # 38-10. Castañon says she formed this opinion based on her "direct observations and interactions with [Plaintiff], his assessment of his own performance, and feedback [she] received from others." Dkt. # 38 at 4.  Therefore, positive feedback on Plaintiff's managerial capacity could "challenge the credibility" of Castañon's interim rating.  *See, e.g.*, *Pottenger*, 329 F.3d at 746.  Some of the evidence Plaintiff identifies does just that.  *See, e.g.*, Dkt. # 42-3 (email from Kercheval to Castañon documenting positive managerial experience with Plaintiff); Dkt. # 42-7 (email from McFadden to Castañon touching on Plaintiff's positive management capacity).

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 25

e.   Payne did not investigate Plaintiff's claims of discrimination before the final suspension decision

Here, Plaintiff stated in his written response to the proposed suspension, "[t]he discipline appears to stem from a bias related to my involvement assisting a victim of sexual harassment that crossed the Deputy Regional Administrator." Dkt. # 18-5 at 2. Plaintiff cites *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018 (9th Cir. 2006) for the proposition that "Payne's failure to investigate discrimination complaints can infer pretext for retaliation and discrimination." Dkt. # 41 at 26. But *Cornwell* is distinguishable. In *Cornwell*, the Ninth Circuit concluded that because the employer "never addressed [Plaintiff's] expressed concern that his demotion was the result of race discrimination[,] [. . .] a reasonable jury could view [the employer's] failure to investigate as an attempt to conceal" illegitimate motives. 439 F.3d at 1033. Here, however, Payne said that Plaintiff "many, many times referred to already being [. . .] in a process." Dkt. # 42-11 at 22.

f.   Statements from a co-worker asserting she believed Plaintiff was being retaliated against by having job duties removed

Finally, Plaintiff cites Kercheval's affidavit taken as part of the EEO investigation. Dkt. # 41 at 27 (citing Dkt. # 42-8). Kercheval says she "witnessed [Plaintiff] being retaliated against starting back in September 2019." Dkt. # 42-8 at 3. Kercheval refers to the September 5, 2019, meeting she had with Castañon discussing the August 26 meeting; the LOR Plaintiff received and showed to Kercheval; and observations of Plaintiff's hiring authority being limited as bases for believing Plaintiff was experiencing retaliation. Dkt. # 42-8 at 3–4. Kercheval also reports that she observed Plaintiff's FOIA manager authority undermined between September 2019 and February 2020. Dkt. # 42-8. This evidence creates a genuine dispute of fact as to whether

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 26

1    Defendant's legitimate, nonretaliatory reasons for transferring Plaintiff's job duties are pretext

2    for retaliation.

3           Because Plaintiff has not provided specific and substantial circumstantial evidence of

4    pretext for the investigative interview, Defendant's motion for summary judgment is GRANTED

5    as to that action.  Given the evidence of pretext provided by Plaintiff, Defendant's motion for

6    summary judgment is DENIED as to these acts: (1) transferring of Plaintiff's FOIA job duties

7    and alleged hostile treatment, (2) the letter of reprimand, (3) the proposed suspension, (4) the

8    negative interim review, and (5) the final suspension.

9    C.     Plaintiff's Motion for Partial Summary Judgment on Elements of the Title VII Retaliation
10          Claim

11          Plaintiff moves this Court to decide as a matter of law that several actions taken by

12   Plaintiff were protected activities and several actions taken by the EPA were adverse

13   employment actions for purposes of his Title VII retaliation claim.  Dkt. # 39.[7]  As the moving

14   party, Plaintiff has the burden of showing no genuine issue of fact exists regarding the claim or

15   element on which he seeks summary judgment.  *Celotex Corp.*, 477 U.S. at 323; *Richards v.*

16   *Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).

---

[7] Defendant asks this Court to exercise its discretion not to rule on discrete elements of Plaintiff's retaliation claim.  Dkt. # 44 at 9.  But courts can rule on what is a protected activity or adverse employment action at the summary judgment stage.  *See, e.g.*, *Smith v. Clover Park Sch. Dist. No. 400*, No. 3:21-cv-05767, 2022 WL 17740327, at *10 (W.D. Wash. Dec. 16, 2022) (this Court ruled that several actions were adverse employment actions and protected activities for purposes of Plaintiff's retaliation claim under Washington Law Against Discrimination); *Valdivia v. Washington State Dep't. of Corr.*, No. C20-1429-RSM-SKV, 2021 WL 5217289, at *7 (W.D. Wash. Oct. 15, 2021) (finding several actions employee engaged in were protected activities under the law and an adverse employment action).

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### 1.    Protected activities

An employee engages in a protected activity if they "(1) opposed any practice made an unlawful employment practice by this subchapter, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); *see also Hashimoto*, 118 F.3d at 680.

Plaintiff asks this Court to rule as matter of law that these were protected activities:

(1) Signing the August 9, 2019, letter;

(2) Responses to questions during the September 2019 investigative interview by "Michelle Pirzadeh," Dkt. # 39 at 9 (the Court assumes Plaintiff means the investigative interview by Castañon given that no documented meeting occurred in September 2019 between Plaintiff and Pirzadeh, and the statements Plaintiff references were made during his meeting with Castañon, *see* Dkt. # 38-3);

(3) Telling Payne that Castañon was retaliating against him for opposing sexual harassment after she filed the proposed suspension; and

(4) Filing an informal complaint with the EEO on December 11, 2019 (Dkt. # 40-1), and later filed a formal EEO complaint (Dkt. # 40-2).  Dkt. # 39 at 8–10.[8]

Plaintiff's signing the August letter and responses during the September 2019 investigative interview constitute protected activities.  "[A]n employee's complaints about the treatment of others is considered a protected activity, even if the employee is not a member of the class that he claims suffered from discrimination, and even if the discrimination he

---

[8] Defendant again contends that Plaintiff tries to advance new arguments of retaliation not raised in the amended complaint.  Dkt. # 44 at 4.  As explained above, the Court disagrees.  *See supra* III.B.1.a.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 28

complained about was not legally cognizable." *Ray*, 217 F.3d at 1240 n.3 (citing *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994); *Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 277 (2009) ("a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion.").

Plaintiff asserts, and Defendant does not dispute, that making an informal and formal complaint with the EEO constitutes a protected activity. Dkt. # 39 at 10. The Court agrees, initiation and subsequent formal filing of an EEO complaint for discrimination and retaliation is a protected activity. *See, e.g.*, *Naeim v. McDonough*, No. 2:19-cv-06126-DDP (AFMx), 2022 WL 743514, at *11 (C.D. Cal. Mar. 11, 2022).

Finally, Plaintiff asserts that his communication to Payne that Castaño retaliated against him for opposing sexual harassment by initiating the proposed suspension is a protected activity. Dkt. # 39 at 10 (citing Dkt. # 18-5). An employee engages in a protected activity if they, "(1) opposed any practice made an unlawful employment practice by this subchapter, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). An employee's opposition must refer to "*some* practice by the employer that is allegedly unlawful[,]" but "[i]t is not necessary [. . .] that the practice be demonstrably unlawful; opposition clause protection will be accorded whenever the opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). Plaintiff did not point to any facts or explain that his statement to Payne was based on a "reasonable

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 29

belief." *E.E.O.C.*, 720 F.2d at 1013.  Therefore, Plaintiff has not met his burden for the Court to conclude as a matter of law that his communication to Payne was a protected activity.

In sum, the Court GRANTS Plaintiff's motion for partial summary judgment that Plaintiff's signing the August letter, responses during the September 2019 investigative interview, and informal and formal complaints with the EEO constituted protected activities. The Court DENIES Plaintiff's motion for partial summary judgment that his communication to Payne alleging retaliation by Castañon was a protected activity.

2.      Adverse employment actions

An adverse employment action is any action that is "reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243.

Plaintiff asks the Court to decide these are adverse employment actions:

(1)  The October 29, 2019, Letter of Reprimand;

(2)  The February 21, 2020, Proposed Suspension; and

(3)  The November 20, 2020, Final Suspension Letter.

Dkt. # 39 at 10.

The Ninth Circuit has held that a suspension constitutes an adverse employment action. *Ray*, 217 F.3d at 1240.  Therefore, the Court GRANTS Plaintiff's motion for partial summary judgment that the final suspension constitutes an adverse action.

The Court DENIES Plaintiff's motion for partial summary judgment that the LOR and the proposed suspension constitute adverse actions.  Plaintiff says, "under Ninth Circuit law, a letter of reprimand may constitute an adverse employment action; however, to determine

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 30

whether a letter is considered an adverse employment action, the court must consider whether there was any employment consequence as a result of the reprimand letter."  Dkt. # 49 at 5 (citing *Thomas v. Spencer*, 294 F. Supp. 3d 990, 999 (D. Haw. 2018)).  Plaintiff says that because the LOR and proposed suspension were cited in the final suspension, which led to a decrease in Plaintiff's pay, this shows that these actions constitute adverse employment actions. *Id.* at 5–6.  The Court disagrees.  This is a question of fact that depends on whether the jury believes Plaintiff suffered an employment consequence as a result of the letter of reprimand or proposed suspension.  *See e.g.*, *Williams v. McDonough*, No. 20-10074-SPG, 2022 WL 18214015, at *17 (C.D. Cal. Nov. 7, 2022) (citing case law finding that a proposed removal was not an adverse employment action and others that found the opposite); *Collins v. Spencer*, No. 17-1723-JLS, 2020 WL 487419, at *8 (S.D. Cal. Jan 30, 2020); *Thomas*, 294 F. Supp. 3d at 1000).  As Plaintiff has not shown that there is no genuine dispute of fact about the connection between the LOR, the proposed suspension, and the final suspension decision, the Court denies his motion as to the LOR or proposed suspension.

D.      Defendant's Motion for Summary Judgment on Plaintiff's Title VII Retaliatory Hostile Work Environment Claim

A hostile work environment is a cognizable claim under the anti-retaliation provisions of Title VII.  *Ray*, 217 F.3d at 1244–45.  As the Ninth Circuit explained, "[h]arassment is obviously actionable when based on race and gender[]" and "[h]arassment as retaliation for engaging in protected activity should be no different."  *Id. at* 1245.  But "[h]arassment is actionable only if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.*

1  A prima facie case of a hostile work environment requires Plaintiff to show "(1) verbal or

2  physical conduct based on the plaintiff's race or engagement in a protected activity; (2) [that] the

3  conduct is unwelcome; and (3) [that] the conduct is 'sufficiently severe or pervasive to alter the

4  conditions of the plaintiff's employment and create an abusive work environment.'" *Caldwell v.*

5  *Boeing Co.*, No. C17-1741JLR, 2018 WL 2113980, *4 (W.D. Wash. May 8, 2018) (quoting

6  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008)); *see also Rhine*

7  *v. Buttigieg*, No. 2:20-cv-01761-RAJ-BAT, 2022 WL 18673225, at *10 (W.D. Wash. Nov. 22,

8  2022), *report and recommendation adopted*, No. 21-1761 RAJ, 2023 WL 1928089 (W.D. Wash.

9  Feb 10, 2023).  Courts consider whether the working environment is both subjectively and

10  objectively perceived as hostile.  *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

11  And "[w]hen assessing the objective portion of a plaintiff's claim, [the court] assume[s] the

12  perspective of the reasonable victim." *Id.* at 924.  Thus, a plaintiff must show that they perceived

13  the work environment to be hostile and that a reasonable person in their position would also

14  perceive it as such.  *Thomas v. Del Toro*, No. 21-00010 JAO-KJM, 2023 U.S. Dist. LEXIS

15  55250, at *11 (D. Haw. Jan. 24, 2023) (citing *Brooks*, 229 F.3d at 923).

16  Plaintiff described the retaliatory hostile work environment in an interrogatory response:

17  "Since Plaintiff opposed sexual harassment by a senior male supervisor, Plaintiff suffered hostile

18  treatment from his female supervisor which included ostracization, removing of responsibilities,

19  micromanagement, general hostility, and discipline."  Dkt. # 37-10 at 4.

20  Ostracism, micromanagement, and discipline do not inherently support a retaliation claim

21  under Title VII.  *Strother*, 79 F.3d at 869 ("mere ostracism in the workplace is not enough to

22  show an adverse employment decision."); *Denning v. Cnty. of Washoe*, 799 F. App'x 5477, 547–

23

24  ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 32

48 (9th Cir. 2020) (affirming dismissal of a hostile work environment claim under the Americans with Disabilities Act when supervisor, in part, subjected plaintiff to "excessive scrutiny."); *Rhine*, 2022 WL 18673225, at * 12 ("[A]n employer does not lose the ability to otherwise review an employee's conduct and, if necessary, discipline the employee, merely because the employee has filed a discrimination claim.") (citing *Unt*, 765 F.2d at 1446 for the proposition that "an employee is not protected by Title VII when he violated legitimate company rules, [. . .], disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals.'").

Plaintiff says, "[c]ollectively, all of the events described above also could be considered a Retaliatory Hostile Work Environment that are in response to [Plaintiff's] multiple protected activities." Dkt. # 41 at 28.  The Court does not know what "events" Plaintiff is referring to as Plaintiff does not explain—this statement comes at page 28 of his 33-page brief, following the entire section on retaliation.  *Id.*  And the record does not reflect any evidence of harassment that is "'sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.'"  *Caldwell*, 2018 WL 2113980, *4 (quoting *Johnson*, 534 F.3d at 1122.

The Court therefore GRANTS Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim.

1

2

E.    Defendant's Motion for Summary Judgment on Plaintiff's Title VII Disparate Treatment Claim

Motions for summary judgment on disparate treatment claims, like Title VII retaliation claims, are analyzed under the *McDonnell Douglas Corporation* burden-shifting framework. 411 U.S. at 802–805; *see supra* III.B.

A plaintiff makes a prima-facie showing of disparate treatment when they offer evidence that "give[s] rise to an inference of unlawful discrimination, either through the framework set forth in *McDonnell Douglas Corp[oration] v. Green* or with direct or circumstantial evidence of discriminatory intent." *Vasquez*, 349 F.3d at 640 (internal quotation marks omitted); *see also Hittle*, 76 F.4th at 888 (9th Cir. 2023). While "[t]he burden of establishing a prima facie case of disparate treatment is not onerous[,]" a plaintiff must still satisfy this burden by a preponderance of the evidence, regardless of the approach they choose. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981).

Plaintiff clarifies in his response to Defendant's motion that the only adverse action underlying his disparate treatment claim is the four-day suspension. Dkt. # 41 at 30 n.4.

Plaintiff points to circumstantial evidence to make his prima facie showing and relies on the "same evidence discussed in his retaliation claim." Dkt. # 41 at 31. Plaintiff summarizes the circumstantial evidence: (1) "[Plaintiff] has presented facts demonstrating that the Four-Day Suspension was unjustified"; (2) "female EPA employees who complained were not subject to similar unjust four-day suspensions as [Plaintiff]"; (3) "The EPA also departed from its established policies in the case of the four-day suspension, suggesting possible disparate treatment"; (4) "the positive feedback [Plaintiff] received from other employees contradicts the

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 34

basis for his suspension"; and (5) "[Plaintiff] explicitly raised concerns of Gender Discrimination to James Payne, and he made no effort to investigate his concerns." *Id.*

Assuming—without deciding—that the circumstantial evidence presents a prima facie case of disparate treatment, the burden shifts to Defendant to provide a nondiscriminatory reason for the actions taken. *Texas Dep't. of Cmty. Affs.*, 450 U.S. at 255. As explained above, Defendant proffered legitimate and nondiscriminatory reasons for Plaintiff's four-day suspension. *See supra* III.B.2. Plaintiff does not contest these are legitimate reasons. *See generally* Dkt. # 41.

Because Defendant has proffered legitimate and nondiscriminatory reasons, the burden shifts back to Plaintiff to show "that the employer's reason is a pretext for discrimination." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). As in a retaliation claim, "[a]n employee can prove pretext either: (1) directly, by showing that unlawful discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) (internal quotation marks omitted)). And "[t]o show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 642. "[C]ontext is key when a plaintiff alleges [ ] discrimination based on circumstantial evidence." *Merrick*, 867 F.3d at 1150. Thus, even if the circumstantial evidence is enough to satisfy plaintiff's burden of establishing a prima facie case, it may not be enough at the pretext stage. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010).

First, according to Plaintiff, he presented facts showing the four-day suspension was unjustified.  Dkt. # 41 at 31.  As explained above, *see supra* III.B.3., it does not matter whether Payne's proffered justifications are *objectively* false—it matters only whether he honestly believed his stated reasons.  *Villiarimo*, 281 F.3d at 1063.  And Plaintiff does not point to evidence creating a genuine dispute of fact that Payne did not honestly believe the proffered reasons for the four-day suspension.  *See supra* III.B.3.

Second, Plaintiff asserts that a similarly situated employee outside of Plaintiff's protected class was treated more favorably.  Dkt. # 41 at 31.  But as explained above, Plaintiff has not pointed to a "similarly situated" employee outside of his protected class.  *See supra* III.B.3.

Third, Plaintiff says that Payne's departure from established policies suggests disparate treatment.  Dkt. # 41 at 31.  Plaintiff claims that "EPA policy requires that a Federal Manager consult a table of penalties, make a determination as to whether discipline to Edgell was consistent with other employees, the clarity to which the employee was on notice of any rules that were violating [*sic*] in committing the alleged offense, mitigating circumstances, and the adequacy of alternative sanctions."  Dkt. # 41 at 21.  Plaintiff asserts that Payne "couldn't recall consulting a 'table of penalties,'" or the "EPA's 'Appendix Guidance on Corrective Discipline,'" and could not recall "looking for employees who had 'conduct unbecoming' discipline to compare [Plaintiff] to them [*sic*]."  *Id.* at 21 (citing Dkt. # 42-11, Payne's deposition).  The Policy, Dkt. # 43-4, does not speak to an employee's notice or adequacy of alternative sanctions.  Nor does Plaintiff address, and no evidence in the record disputes the fact, that Castañon took these actions before filing the proposed suspension.  Dkt. # 38-6 at 3–4.  Payne considered the proposed suspension notice and supporting documentation, including Plaintiff's oral and written

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 36

responses. Dkt. # 37-9. Plaintiff does not point to, nor does the record show, any evidence that the process taken by Payne violated EPA policy.

Fourth, Plaintiff says that the positive feedback he received from other employees contradicts the basis for his suspension. Dkt. # 41 at 31. But the basis for Plaintiff's four-day suspension was that he made disparaging comments about the work of employees he supervises and an inappropriate comment about an explosive device. Dkt. # 36 at 20. As explained above, the evidence of good performance does not "challenge the credibility" of Payne's motives in deciding on a four-day suspension. *See, e.g.*, *Pottenger*, 329 F.3d at 746; *See supra* III.B.3.

Finally, Payne's decision to not investigate Plaintiff's reports of *retaliation*[9] is not evidence of pretext for gender discrimination.

Thus, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's disparate treatment claim.

## IV
### CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment. The Court:

(1) GRANTS Defendant's motion for summary judgment on Plaintiff's retaliation claim as to the

    following acts:

      a. The September 3, 2019, investigative interview; and

---

[9] Plaintiff's written response to the proposed suspension stated, "[t]he discipline appears to stem from a bias related to my involvement assisting a victim of sexual harassment that crossed the Deputy Regional Administrator." Dkt. # 18-5 at 2.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 37

b.  Ostracism in early September 2019.

(2) DENIES Defendant's motion for summary judgment on Plaintiff's retaliation claim as to the

following acts:

    a.  Removal of job duties and hostility in late September 2019;

    b.  October 29, 2019, Letter of Reprimand;

    c.  February 21, 2020, proposed suspension;

    d.  April 2020, negative interim review rating; and

    e.  November 20, 2020, Final Suspension Letter.

(3) GRANTS Plaintiff's motion for partial summary judgment as to the following protected

activities:

    a.  Signing the August 9, 2019, letter;

    b.  Responses during the September 2019 investigative interview; and

    c.  Filing an informal complaint with the EEO on December 11, 2019, and later filing of

       a formal EEO complaint.  Dkt. # 39 at 8–10.

(4) DENIES Plaintiff's motion for partial summary judgment that the following is a protected

activity: Telling Payne that Castañon was retaliating against him for opposing sexual

harassment after she filed the proposed suspension.  Dkt. # 39 at 10.

(5) GRANTS Plaintiff's motion for partial summary judgment that the November 20, 2020,

Final Suspension Letter is an adverse employment action.  Dkt. # 39 at 10.

(6) DENIES Plaintiff's motion for partial summary judgment as to the following adverse

employment actions for Plaintiff's retaliation claim:

    a.  October 29, 2019, Letter of Reprimand; and

    b.  February 21, 2020, Proposed Suspension.  Dkt. # 39 at 10.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 38

(7) GRANTS Defendant's motion for summary judgment on Plaintiff's disparate treatment

claim.

(8) GRANTS Defendant's motion for summary judgment on Plaintiff's retaliatory hostile work

environment claim.

Dated this 15th day of December, 2023.

John H. Chun
United States District Judge

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT - 39